have the more serious ones properly examined, they could hardly complain.

The charge of the court seems to have been fully as favorable to the defendants as they could have required. Most of their requests to charge were charged, and, at the request of the defendants, the court expressly charged that "damages could not be recovered from the defendants unless they maintained, at the time the accident happened, this wagon in front of the street, and it was a nuisance,—a public nuisance,—and they had no right to have it there." Counsel for the defendants then said, "Unless the jury find it was a public nuisance." The court replied, "Yes; can't recover against them, regardless of breach of public duty. Is that what you mean?" Counsel then said what he meant: "I say, unless the jury can find from the evidence that they violated some statute or some ordinance, or kept the place in an unlawful or improper manner, the plaintiff cannot recover against them." That, the court correctly refused to charge. Counsel also indulges in some criticism of the court, because he asked the counsel for the plaintiff whether he had any objection to the court's charging some of the defendants' requests. When requests are presented to the court which evidently are so drawn as to present different phases of the question submitted to the jury, so that upon them exceptions can be taken which may be valuable upon appeal, it is certainly not improper for the court to ask the counsel for the adverse party as to his view of the propriety of such requests; and, while a refusal to charge the requests after such discussion with the counsel is subject to an exception and review, the fact that the court had asked the counsel for the adverse party for his views upon the propriety of the requests is certainly not an error that can be complained of. A consideration of the whole charge, including those requests of the defendant which were acceded to by the court, I think establishes that the law was charged fully as favorable to these defendants as was justified by the facts presented, and that the verdict of the jury was amply sustained by the evidence.

The judgment was right, and is affirmed, with costs. All concur.

---

SULLIVAN v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. June 11, 1897.)

INJURY TO EMPLOYE—DANGEROUS PREMISES.

It appeared that, while decedent and some 30 other men were constructing a temporary railway track, on one side of which, at a distance of about three feet, was an iron girder secured to pillars which formed part of the structure of an elevated railroad, a car approached, drawn by horses, walking, and that all the men at work in front of the girder thereupon passed over to the opposite side of the track, except decedent, who might have done likewise, but who stepped back against the girder, and was crushed between it and the passing car. *Held*, that such evidence constituted no basis for a finding that defendant had failed to use reasonable care in providing decedent a safe place in which to work.

Appeal from trial term, New York county.

Action by Ellen Sullivan, as administratrix of the estate of Daniel C. Sullivan, deceased, against the Third Avenue Railroad Company. From a judgment dismissing the complaint, and awarding the defendant costs, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, INGRAHAM, and PARKER, JJ.

Horace K. Doherty, for appellant.
Albert H. Walker, for respondent.

PARKER, J. On the 6th day of April, 1892, the defendant was constructing its cable road on Third avenue, and for that purpose was obliged temporarily to maintain a track on the westerly side of the west or down-town track. At that date so much of the temporary track as is involved in this controversy branched from the regular track between Eighth and Seventh avenues, and continued down the avenue below the point where the accident occurred which resulted in the loss of the life of plaintiff's intestate. He was crushed between a moving car on the temporary track and an iron girder, about 30 feet long, which was tied to two iron pillars which formed a part of the elevated railroad structure on Third avenue. The distance between this girder and the nearest rail of the temporary track was about three feet. For about 20 minutes before the accident happened, plaintiff's intestate, Daniel C. Sullivan, and between 30 and 40 other men were at work in and about the temporary track in the immediate vicinity of this girder. The object of their labor was to make it possible to use the temporary track for the movement of defendant's cars down town. Some of the men were at work laying timber, others were paving, and still others working with pick and shovel. While they were thus at work a southbound car passed over the track. All of the men who were at work in front of this girder passed over to the westerly side of the track except the intestate, Sullivan, who stepped back against the girder; but the car projected so far over the rail that, in passing him, he was crushed between the girder and the car, the injury causing his death.

The learned trial justice was unable to discover in the evidence any basis for a finding that this defendant had neglected to perform any duty which it owed to the plaintiff, and, after an attentive examination of it, we have reached the same conclusion. A master is not bound to furnish an absolutely safe place for his servants to work in,—indeed, it is impossible always to do so in works of new construction; but he is required to use reasonable care and prudence in providing such a place. Wherever this defendant omitted its duty, it was for the plaintiff to point out; but she seems to us not to have succeeded. Clearly it was not wrongful for the defendant to construct temporary tracks, nor to construct them where it did, even if there was not sufficient space for a man to stand between the car body and the pillars, or the car body and the girder. It was not a part of the scheme of construction that a man

should stand, for the purposes of work, between the girder and the car. The others did not do it. They got out of the way while the car was passing. Plaintiff's intestate had the same opportunity, but he did not avail himself of it. Why, of course, we cannot say; but it is quite apparent that, according to his calculation, there was room for him to stand between the girder and the car while the car was passing, and he preferred to do it rather than take the two or three steps necessary to get on the westerly side of the track, as did his associates. He had plenty of time to get out of the way, for the only witness who testified about the speed of the car said: "There was not anything to prevent him from going south of that girder. The car was coming along,—walking on,—coming slow." It was, therefore, not the fault of the driver, for he drove slowly, his horses walking.

It is suggested that the fastening of the girder to the pillars created a pocket, into which the plaintiff's intestate was allured, only to become a victim to a lack of foresight on the part of the defendant. Assuming that the proposition asserted would be worthy of serious consideration if the defendant were responsible for the construction of the pocket, such a consideration is out of place on this review, because it does not appear that the defendant fastened the girder to the iron pillars. Not only are we unable to find any evidence of neglect on the part of the defendant to perform any duty which it owed to plaintiff's intestate in the premises, but it is clear that the plaintiff failed to meet the burden resting upon her of showing that her intestate was free from contributory negligence. So far as the evidence discloses, he was at work, with others, between him and the projecting car, which was moving slowly, the horses walking. His associates crossed over to the westerly side of the track, with the exception of those south of the girder, and they stepped out on either side of the track. Sullivan might have done so. He had the same opportunity as did the others, but he did not, and for the reason, doubtless, that he thought there was sufficient room for the car to pass. In that he was mistaken. It was his mistake, his carelessness, his neglect of ordinary caution, which made the accident possible.

The judgment should be affirmed, with costs. All concur.